**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PATMONT MOTOR WERKS, INC., | 3:04-CV-0473-BES (VPC) |
| Plaintiff, | |
| vs. | **ORDER** |
| CSK AUTO INC., | |
| Defendant. | |

Plaintiff, Patmont Motor Werks, Inc., ("plaintiff"), has moved for sanctions (#81), defendant, CSK Auto, Inc., ("defendant"), opposed (#92) and plaintiff replied (#101). Having considered the papers on file herein, the court denies plaintiff's motion (#81) as more fully set forth below.

### I. Procedural History

Plaintiff has sued defendant, alleging trademark and copyright infringement, false designation of origin, deceptive trade practices, and other state law torts concerning the sale and promotion of gas- and electric-powered scooters. Since 1986, plaintiff has manufactured several models of motorized scooters, scooter parts, and scooter accessories sold under the "Go-Ped" registered trademark. Plaintiff alleges in that 2003, defendant began to sell motorized scooters at its automotive supply stores, and that the scooters defendant sold infringed on plaintiff's trademarks and copyrights. In October 2004, defendant responded to plaintiff's informal complaints of trademark infringement regarding the use of variations of "go-ped" as keywords in its search directory, and it voluntarily agreed to remove "Go-Ped" from its website search engine index file (#92, Ex. E). Thus, in October 2004, defendant acknowledged to plaintiff that it had used variations of "Go-Ped" in its directory. The parties were unable to resolve their dispute and this lawsuit ensued.

Approximately one year later, in October 2005, plaintiff took the deposition of David Waxburg, defendant's senior director of information technology operations and planning (#81, Ex. 7). Mr. Waxberg admitted that defendant used "Goped" as a keyword on its websites to direct customers to competing motorized scooters, and he also testified that he had an email confirming that defendant used "Goped" as a keyword on its search engine. *Id.* When plaintiff's counsel inquired whether this email had been produced, defendant's counsel responded that the email had not been produced because it was not responsive to plaintiff's discovery requests. *Id.*

After the close of discovery, plaintiff filed a consolidated motion to compel, application for sanctions, and extension of discovery cutoff and related deadlines (#s 42, 43, & 44). The motion to compel centered on the email disclosed at Mr. Waxburg's deposition, and plaintiff sought leave to require production of documents that used the mark "Go-Ped" and any permutations (#42). The court held a February 16, 2006 discovery status hearing to consider these motions, during which it denied plaintiff's motion for sanctions (#43), and then directed the parties to meet and confer concerning plaintiff's motion to compel defendant to produce certain documents (#66). After a recess, counsel reported that they had reached agreement concerning additional limited discovery.[1]  *Id.*  The court

---

[1] The parties have meet [sic] and conferred and propose to the Court the following agreement which will be accomplished no later than **Thursday, March 16, 2006**:

1) With regard to the top fifty search emails, the defendants will confirm that no other emails exist, that they have produced all documents or, if more email exist, defendant will produce them for the time periods of April 2003 to October 2003 and October 2004 to present.

2) Defendant's counsel will inquire of defendant whether a reasonable search, and subsequent document production, can be done regarding the following issue:

From the period October 2003 through October 2004, defendant's website included as key words, "Go-Ped" and "Go-Peds." The issue is whether data and/or documents exist that would reveal whether computer users entering the website who searched "Go-Ped" or "Go-Peds" would be (a) directed to the "scooter" category, and (b) whether that individual user purchased a scooter.

If, after consultation with defendant, such documents and records can be produced, defendant will produce them. If there are not documents responsive to this request, defendant shall provide an affidavit detailing the procedure it used to ascertain whether such records exist and why it cannot produce them.

2

granted in part and denied in part plaintiff's application for an extension of discovery cutoff and related deadlines, and by its order, the court implicitly granted in part and denied in part the motion to compel. *Id.* Finally, the court directed the parties to schedule a follow-up discovery status conference the week of March 20, or March 27, 2006. *Id.*

The parties scheduled the March discovery status conference, but then jointly requested a continuance, as defendant was still in the process of searching for the documents which were the subject of the February 16, 2006 order (#71); therefore, the status conference was rescheduled to May 4, 2006 (#72). On April 18, 2006, defendant produced a keyword spreadsheet that lists all new keywords added to defendant's search engine, the dates the new keywords were added, and additional keywords and product categories that the new keywords are associated with on the websites (#75, Ex. 1). The spreadsheet states that defendant added plaintiff's specific trademark, "Go-Ped," with a hyphen, as a keyword on October 6, 2003. *Id.* It appears undisputed that defendant had these documents in its possession prior to the time plaintiff initiated this proceeding.

In anticipation of the May 4, 2006 hearing, the parties filed discovery status reports, and plaintiff indicated in its report that it intended to renew its motion for sanctions based on the recent disclosure of the spreadsheet and related documents (#75). At the hearing, the court indicated that it would construe that portion of plaintiff's status report as a renewed motion for sanctions and directed plaintiff

---

3) The defendant will produce emails in which "Go Ped" and "Go Peds" or any variation appear in the following categories:

   a. The defendant will do a company search through the email server of the internal emails users of CSK and also the emails between CSK employees and vendors or suppliers of the scooters.

   b. The defendant will review the personal computers of the following CSK employees: Jerry Via, Michael Thompson, Jim Schomberger, David Wexberg, and the members of the E.P.C. Group.

4) Defendant shall provide an affidavit, which will explain the protocol used for searches responsive to these discovery requests, and to the extent documents have been deleted in the normal course of business, an explanation of the defendant's standard practice with respect to retention and deletion of defendant's documents and records.

3

to file supplemental points and authorities to indicate under which provisions of the Federal Rules of Civil Procedure the relief was requested (#79). Thereafter, the parties were ordered to file opposition and reply briefs pursuant to LR 7-2. *Id.* As a consequence of the newly disclosed documents, the parties agreed to withdraw their respective motions for summary judgment without prejudice with leave to re-file. *Id.* The parties have since re-filed their motions for summary judgment, and they stand submitted (#s 95 & 97). Plaintiff now moves for sanctions pursuant to Federal Rules of Civil Procedure 26 and 37, and also pursuant to LR 4-1 (#81).[2]

## II.  Discussion and Analysis

### A.  Fed.R.Civ.P. 26:  Initial and Supplemental Disclosures

Rule 26 requires a party to provide "all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses." Fed.R.Civ.P. 26(a)(1)(B). However, the 2000 Amendments made significant changes in the initial disclosure requirements, as well as the duty to supplement:

> The initial disclosure obligation of subdivisions (a)(1)(A) and (B) has been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses. 'Use' includes any use at a pretrial conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example.
>
> * * *
>
> A party is no longer obligated to disclose witnesses or documents, *whether favorable or unfavorable,* that it does not intend to use.

Fed.R.Civ.P. 26 Advisory Committee's Note, 2000 Amendment, Subdivision (a)(1) (emphasis supplied). Defendant indicates it had no intention of using the spreadsheet to support its defenses; therefore, it

---

[2]Although plaintiff cites LR 4-1 as a basis for its motion for sanctions, plaintiff's points and authorities contain no legal argument in reliance on this local rule; therefore, the court does not consider LR 4-1 as a basis for the motion. Plaintiff also briefly notes in its points and authorities that sanctions are warranted pursuant to Rule 11(c)(1)(B); however, there is no evidence that plaintiff complied with the safe harbor provisions of Rule 11. For that reason, the court will not consider sanctions pursuant to Rule 11.

1 had no obligation to produce it pursuant to Rule 26 or to supplement its initial disclosures.[3]
2 Nevertheless, once defendant was ordered to review its files and produce specific documents responsive
3 to this court's February 16, 2006 order, it did so and produced the spreadsheet in April 2006. Because
4 defendant never intended to use the spreadsheet to support its defenses, it did not violate Rule
5 26(a)(1)(B), and plaintiff is not entitled to sanctions on this ground.

### B. Fed.R.Civ.P. 26(g)(3): Answers and Supplemental Answers to Interrogatories

Plaintiff next seeks discovery sanctions against defendant pursuant to Fed.R.Civ. P. 26(g)(3) on the ground that defendant failed to answer and supplement Interrogatory No. 6:

> <u>Interrogatory No. 6</u>: Please identify the brands and models of scooters to which users of the CSK website have been directed under the "Go," "go," "Goped," GoPed," "Go-Ped," "Ped," or "ped" *metatags* at any time from the commencement of the sale of "Zooma" brand scooters to the present time.
>
> <u>Response</u>: Subject to its general objections, CSK further objects to this request as overbroad and beyond the scope of Judge Cook's [sic] order permitting discovery as to the "Zooma" brand scooters. CSK also objects that the request is overbroad and not relevant to any claim or defense in this lawsuit, as required by Rule 26(b)(1), to the extent that it seeks information pertaining to "go" and "ped," which are not trademarks of Patmont but are common words used in the English language. Without waiving the objections, CSK has not used "Go," "go," "Goped," "GoPed," "Go-Ped," "Ped," or "ped" as *metatags* on any of its website pages in order to direct users to any particular brand of scooter, including "Zooma" brand scooters.

#81, Ex. 4 (emphasis supplied). Plaintiff's view is that the disclosure of the keyword spreadsheet reveals that defendant used "Go-Ped" to sell competing motorized scooters, that a simple inquiry would have revealed the existence of the spreadsheet, and that defendant opted to rely instead on the statements of Mr. Waxberg (#81). However, the interrogatory specifically asked for metatags that defendant may

---

[3] This court reviewed defendant's answer (#10), its initial motion for summary judgment (#45), and its subsequent motion for summary judgment (#95) to determine whether, as plaintiff claims, defendant's defenses and summary judgment briefs are based on the factual contention that defendant did not used the hyphenated "Go-Ped" trademark. With the exception of minor revisions to the second motion for summary judgment to account for the newly disclosed spreadsheet, defendant's position remains unchanged: that the inclusion of a work (including a trademark) in a website search directory is not actionable as trademark infringement and that its defenses do not depend whether on the exact trademark "Go-Ped" was utilized as a keyword.

have used, and it undisputed that a "metatag is hidden HTML code used on a web page to describe the contents of a website and used by Internet search engines (i.e. Google) to index and return a list of websites relevant to a keyword searched by an Internet user" (#92) at page 10, n. 4. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999). Defendant responded that it had not used the terms at issue as metatags on its website to direct consumers to any particular brand of scooter, including "Zooma" brand scooters, and plaintiff has not challenged this response as untruthful. Rather, plaintiff contends that "it was obvious by that stage of litigation that the interrogatory went to Patmont's claim that CSK used "Go-Ped" to redirect consumers to CSK's competing scooters" (#81). The court cannot speculate what may or may not seem obvious to the parties during discovery, and a party responding to discovery requests is entitled to respond to the plain meaning of the request. Therefore, sanctions are not warranted on this basis.

### C.    Mandatory sanctions pursuant to Rule 37(a)(4)(A)

Plaintiff's final basis for sanctions is that defendant produced the spreadsheet only after plaintiff filed its second motion to compel and that although this court did not specifically grant or deny plaintiff's original motion to compel, it did require defendant to produce additional documents. Therefore, sanctions are justified because the motion to compel is the only reason that defendant ultimately disclosed the spreadsheet.

The court has a clear recollection of the February 16, 2006 hearing during which it considered plaintiff's first motion to compel (#66). At the hearing, defendant correctly pointed out that plaintiff had failed to comply with the meet-and-confer requirements of LR 26-7(b) and asked the court to deny the motion on that ground alone. Plaintiff's counsel conceded that he had failed to certify compliance with LR 26-7, but argued that plaintiff was nevertheless entitled to the discovery it sought, given Mr. Waxberg's testimony at his October 2005 deposition. The court recalls its admonition to plaintiff's counsel that failure to comply with LR 26-7 is indeed grounds for denial of a motion to compel, but determined that the interests of the parties would be best served by declaring a recess, by having counsel discuss how to resolve the discovery dispute, and by placing that agreement on the record (#66). It is pursuant to that agreement, which this court carefully incorporated into its order (#66), that defendant

6

produced the spreadsheet in April 2006.  Had plaintiff engaged in the meet-and-confer process prior to filing its motion to compel, the parties have may well resolved this dispute and avoided not only the first motion for sanctions, but the second as well.

The court observes that notwithstanding this court's serious concerns about plaintiff's failure to meet and confer expressed at the February 16, 2006 hearing, the court attempted to fashion a resolution that would enable the discovery to be completed for the benefit of all concerned.  The court will not sanction defendant for doing what the court ordered it to do in February 2006, and it will not reward plaintiff for its violation of the meet-and-confer requirement.  To do otherwise undermines the meet-and-confer requirement and suggests to the court that in the future, the best course may be to ignore the added time and expense to the parties in resolving discovery disputes and, instead, deny motions for sanctions outright, which fail to provide the proper certification pursuant to LR 26-7.  Based on the foregoing, plaintiff's motion for sanctions is denied on this ground as well.

### III. Conclusion

Having considered the parties' papers on file herein, based on the foregoing, and good cause appearing,

IT IS ORDERED that plaintiff's motion for sanctions (#81) is **DENIED**.

DATED:   September 8, 2006.

*Valerie P. Cooke*
_____
UNITED STATES MAGISTRATE JUDGE